# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 06 C 6642 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| | ) | |
| ALONZO PERKINS | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Alonzo Perkins ("petitioner" or "Perkins") has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons explained below, that petition is denied.

**I.  Background**

On January 30, 2003, Perkins was charged in an indictment with possession of a firearm by a felon and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(g)(1) and 922(k), respectively. On December 18, 2003, following a jury trial, Perkins was convicted on both counts. On June 10, 2005, this court sentenced Perkins to fifteen and five years' imprisonment, to be served concurrently. Perkins appealed his sentence, challenging this court's determination that his prior narcotics convictions were "serious drug offenses" that subjected him to an enhanced sentence under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). The Seventh Circuit affirmed petitioner's conviction and sentence. *United States v. Perkins*, 449 F.3d 794 (7th Cir. 2006).

At trial, the government presented testimony of the four police officers, Officers Bauman, Greenwood, Hoffman and Nikken, who were involved in the incident and arrest of Perkins. Officers

Greenwood and Bauman testified that they were driving the wrong way down Mayfield Street in the 15th District when they saw Perkins standing on the corner of Walton and Mayfield holding a chrome gun. They then saw him take off down Walton Street and Officer Bauman radioed to Officers Nikken and Hoffman, who were in a separate car behind them, that they had a guy with a gun and Officers Nikken and Hoffman should take the alley. Officers Bauman and Greenwood then turned down Walton Street. Officer Greenwood got out of the car and chased Perkins on foot while Officer Bauman continued in the car, eventually pulling in front of petitioner and cutting him off. At that point, petitioner turned into a gangway. Officer Greenwood continued behind him and Officer Bauman got out of the car and followed. When petitioner reached the backyard after going through the gangway, Officers Bauman and Greenwood saw him take the gun and toss it over a fence.

Officers Nikken and Hoffman testified that they were driving the wrong way down Mayfield, following Officers Bauman and Greenwood, when they heard Officer Bauman radio something about an individual with a gun and that they should hit the alley. They went down the alley moving from gangway to gangway to see if anyone was going to emerge into the alley. They saw petitioner in a backyard and got out and placed him under arrest.

Officers Bauman and Greenwood further testified as follows. Officer Bauman looked over the fence and saw the gun lying in the yard. He walked around into the backyard and retrieved it. Officer Greenwood made the gun safe by removing the ammunition and he found that there were nine rounds, one of which was in the chamber.

Officers Nikken and Hoffman further testified that when Perkins was back at the police station sitting in the processing room with Officers Nikken and Hoffman, Perkins said that the streets were rough and he needed the gun for protection.

Three other witnesses testified for the government. Fingerprint specialist Richard Canty testified that he was unable to find any usable prints on the gun or ammunition. He further testified that this did not mean that it had not been touched nor was it unusual not to find prints on a gun or ammunition. ATF Special Agent Michael Casey also testified for the government. He testified that the gun, a Lorcin, was manufactured in the state of California and therefore moved in interstate commerce. He also testified about the obliterated serial number on the gun and explained that when a serial number has been obliterated that gun, if recovered in a crime, cannot be traced to its purchaser. He also testified that the obliterated serial number was in a place on the gun where anyone familiar with guns would be able to see if it was obliterated. Forensic scientist Aaron Horn testified that he was able to use scientific techniques to restore the obliterated serial number.

Perkins presented two witnesses. His girlfriend, Shirley Howard, testified that she and Perkins had a very heated argument that night and Perkins, after being encouraged to do so by his relatives, left their house through the back door. After approximately five or ten minutes went by, Howard heard Perkins' laughing on the front porch. She exited the premises through the back door and as she approached the front of the house, she saw police officers putting Perkins in the back seat of a police car. Perkins' cousin, Darquello Sanders, testified that he saw Perkins exit his house and begin walking down the street, looking for Perkins' son. Sanders testified that after someone claimed that there had just been a "hit," he saw seven or eight individuals, including Perkins, running through the gangway when the police arrested Perkins.

The parties stipulated to the fact that prior to October 7, 2002, Perkins had been convicted of a felony.

In his Section 2255 motion, Perkins alleges he was denied the effective assistance of trial counsel because: (1) counsel failed to file a motion to suppress statements made by Perkins; (2) counsel failed to file timely post-trial motions; and (3) counsel failed to present a justification defense and request a jury instruction on justification. He claims he was denied the effective assistance of appellate counsel when counsel failed to raise the following issues on appeal: (1) the district court's refusal to give a mere presence instruction to the jury; (2) the district court's removal of the only African American member of the jury; (3) the government's use of a peremptory challenge to remove a particular prospective juror allegedly in violation of *Batson*; and (4) the district court's refusal to submit to the jury the question of whether Perkins' prior drug convictions qualified under the ACCA. In an amendment to his Section 2255 motion, Perkins also claims that his sentence must be vacated because his prior convictions did not qualify as predicate offenses under the ACCA, citing recent amendments to the federal sentencing guidelines.

**II.     Analysis**

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or sentence has been founded on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995); 28 U.S.C. § 2255. If the court determines that any of these errors infected the judgment or sentence, the petitioner's conviction will be vacated or set aside, and the petitioner will be discharged, resentenced, or granted a new trial. 28 U.S.C. § 2255(a).

4

**A. Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel,[1] Perkins must demonstrate: (1) that his attorney's performance was deficient; and (2) that such representation prejudiced his case. *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 687). To satisfy the *Strickland* prejudice element, Perkins must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Strickland*, 466 U.S. at 696.

**1. Failure to File Motion to Suppress**

Perkins first argues that his trial counsel was ineffective for failing to move to suppress statements made by him following his arrest. In support, he attaches three affidavits. The first is from Felice Smith, his aunt, who averred that Perkins was under the influence of alcohol and drugs the night of the incident. He also included an affidavit from his sister, Dorothy Perkins, who averred that her brother was intoxicated the night of the arrest. Finally, he provided his own affidavit in which he stated that he was never advised of his *Miranda* rights and that he was continuously questioned by police and only ultimately answered officers' questions after they told him that if he took responsibility for the gun, they would talk to the state prosecutor and recommend a lenient sentence. He further avers that he told his attorney to file a suppression motion and his attorney said he would investigate the allegations and file the motion before trial.

---

[1] Claims of ineffective assistance of counsel may be brought for the first time in a Section 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

When a claim of ineffective assistance of counsel involves a motion to suppress, the petitioner must show that: (1) he would have prevailed on the motion; and (2) there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, petitioner cannot demonstrate prejudice as a result of his trial counsel's failure to move to suppress his statement to police in light of the strong evidence of his guilt. Even if counsel had made the motion and it were granted, the evidence against Perkins – excluding his confession – was still compelling and leads the court to conclude that the outcome would have remained the same. Two police officers testified at trial that they saw Perkins holding a gun, began chasing him, and saw him throw the gun over a fence. The two witnesses called by Perkins did not present strong evidence of innocence. Howard testified that at least five or ten minutes elapsed between the time Perkins left the house and the time she saw him being arrested. It is certainly possible that Perkins walked to the corner, at which time he was seen by the two lead police officers, who began the chase. Sanders testified that he saw Perkins walking toward the corner (which corroborates the police officers' statements that they first saw Perkins on the corner), saw Perkins running with a group of other individuals on the street, and did not see Perkins holding a gun. While this testimony with respect to the lack of gun is helpful to Perkins, it does not outweigh the strength of the testimony by the police officers. The court cannot conclude that there is a reasonable probability that the trial outcome would have been different had the confession been excluded.

   **2.**  **Failure to File Timely Post-Trial Motions**

Perkins claims that his trial counsel was ineffective because he did not file post-trial motions on time, thus resulting in the court's inability to consider them. These motions would have raised

the argument that the evidence against Perkins was insufficient. Respondent argues that Perkins cannot show prejudice here, because even if the motions were properly presented, they would have been denied.

In analyzing a challenge to the sufficiency of the evidence, the court must view all of the evidence in the light most favorable to the government and must uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As explained above, the government presented strong evidence of Perkins' guilt, including the testimony of police officers as well as Perkins' own inculpatory statement. Based on the trial testimony and Perkins' own admission, the court cannot conclude that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, Perkins' sufficiency of the evidence motion would not have been successful, even if his attorney had presented it in a timely manner.[2] As a result, he cannot show that he has been prejudiced by counsel's failure to present the motion.

### 3. Failure to Present a Justification Defense and Request a Jury Instruction on Justification

Perkins next argues that his trial counsel was ineffective for failing to present a justification defense and to request a jury instruction on justification. Perkins seems to be arguing that instead of presenting the defense that he never had a gun, his counsel should have used his statement to the

---

[2] Perkins raises a number of arguments for the first time in his reply brief. This is improper, and such arguments must be deemed waived. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004) (holding that arguments raised for the first time in a reply brief are considered waived). In light of this, Perkins' argument that his trial counsel's failure to file the sufficiency motion also foreclosed raising this issue on appeal is not properly before the court. Even if it were to consider this argument, the court's conclusion that the sufficiency argument would not have been successful dooms this additional claim as Perkins cannot show prejudice from the failure, either in the district court or before the appellate court.

police that he had the gun for protection and presented a theory of self-defense instead. Based on the facts of the case, the court cannot see a basis for Perkins' self-defense theory. The trial testimony by the police indicated that Perkins was on a street corner and immediately began running when he saw the police cars approaching. There was nothing at trial that suggested that Perkins was using the gun to protect himself when the police officers came upon him. His general statement that he needed a gun because the streets were rough was not evidence of his need to defend himself at the time of the incident. In light of the fact that the evidence did not show any immediate need for self defense, his trial counsel's strategy – that Perkins never had a gun and the police officers should not be believed due to inconsistencies in their testimony – was reasonable. Counsel was not ineffective in electing not to pursue a justification defense and for failing to request a jury instruction on justification.

### 4. District Court's Refusal to Give a Mere Presence Instruction to the Jury

Perkins argues that his appellate counsel was ineffective for failing to raise on appeal the district court's refusal to give a mere presence instruction to the jury. At trial, the court sustained the government's objection to the proffered instruction on the grounds that at that point there had been no evidence that would support giving such an instruction. Perkins' counsel argued that a witness was going to testify the following day that there were a number of individuals on the street that night and that there was criminal activity afoot. Thus, the court sustained the objection without prejudice and invited the defense to renew the instruction if further evidence put forth by the defense justified it.

The following day, Perkins called Darquello Sanders, who testified, among other things, that there were lots of people out on the street that night. Defense counsel did not, based on this

testimony, ask that the court reconsider giving the mere presence instruction. During closing, defense counsel argued that the officers could not be believed because they gave allegedly conflicting or inconceivable accounts of the events that night. Defense counsel did not argue any of the evidence offered by Sanders. Respondent contends that Perkins cannot show he was prejudiced by his appellate counsel's failure to raise this issue because the claim had no chance of succeeding on appeal.[3]

In order to show prejudice, Perkins has to show a reasonable probabilty that the appeal would have been successful. In other words, he has to show that his claim that this court erred in not giving a mere presence jury instruction had merit. *United States v. Choiniere*, 517 F.3d 967, 970 (7th Cir. 2008) (appellate court reviews district court's refusal to give a requested jury instruction *de novo*). Keeping in mind that this claim is centered on the court's decision not to give the requested instruction (and not trial counsel's failure to renew the request after Sanders testified), the court does not find any error in its handling of the matter and thus Perkins cannot show that he was prejudiced by his appellate counsel's failure to raise this issue. When first presented with the request, the court denied the request because there had been no evidence presented that would support the instruction. Perkins has not called that conclusion into question. Further, the court invited defense counsel to renew the request if further evidence put forth by the defense justified it. The fact that defense

---

[3] Because the court finds this argument to be persuasive, it need not address respondent's alternative argument that the appellate court would not have addressed the issue because it was waived.

counsel never did so does not mean that the court itself erred in failing to *sua sponte* enter the instruction. Appellate counsel was not ineffective for failing to raise an issue that had no merit.[4]

### 5. District Court's Removal of the Only African American Member of the Jury

Perkins argues that his appellate counsel was ineffective for failing to raise on appeal this court's removal of the only African American member of the jury. The juror failed to show up on the third day of trial. At that point, the defense was presenting its case. The juror called chambers and said she had missed her train. Initially, the court delayed the trial and waited for her, given her representation that she would be on the next train and would arrive by 11:30 a.m. The juror then called at 11:30 a.m., claiming that she had missed the next train as well. At that point, the court, having given the juror almost the entire morning to appear and expressing skepticism about whether the juror would in fact appear at all, decided over defense counsel's objection to replace the juror and proceed.

In order to determine if Perkins can show prejudice, the court must determine if there is a reasonable probability that the issue on appeal would have been successful. The Seventh Circuit applies an "abuse of discretion" standard when a district court decides to remove a juror prior to the

---

[4] Perkins' attempt to add a new claim of ineffective assistance of counsel based on his counsel's failure to renew the jury instruction request occurs for the first time in his reply brief. Because he failed to include this claim in his petition or in his amendment to his petition (to which the respondent was able to respond), the court will not consider this new claim. *Carter*, 383 F.3d at 679 (holding that arguments raised for the first time in a reply brief are considered waived). Further, even if it had been raised properly, such a claim would not be successful. Even if trial counsel had renewed the request, and the court had given the mere presence instruction, there is not a reasonable probability that the outcome of the trial would have been different. A single defense witness testifying that there were a lot of individuals running around the street that night would not have cast significant doubt on strength of the testimony of the two police officers who saw Perkins holding a gun and saw him throw the gun over the fence.

start of deliberations. *United States v. Vega*, 72 F.3d 507, 512 (7th Cir. 1995). Rule 24(c) of the Federal Rules of Criminal Procedure allows a district court to replace with alternates any jurors who "are unable to perform or who are disqualified from performing their duties." The decision to remove a juror "is committed to the sound discretion of the trial judge, and there is no abuse of that discretion if the record shows some legitimate basis for his decision." *United States v. Peters*, 617 F.2d 503, 505 (7th Cir. 1980) (citations omitted). In addition, where the nature of the juror's inability to continue is evident to the court, a hearing on the issue is unnecessary. *United States v. Doerr*, 886 F.2d 944, 970 (7th Cir. 1989) (citing *Green v. Zant*, 715 F.2d 551, 555 (11th Cir. 1983)). In addition, "some showing of prejudice is ordinarily necessary before a conviction will be overturned on this ground." *Peters*, 617 F.2d at 505.

The court concludes that it did not commit reversible error when it replaced the juror in question. While the court was more sympathetic when the juror reported that she missed a single train and would promptly take the next one, this juror promised to appear by 11:30 a.m. – one and a half hours after the trial was due to start – and then called to say she had missed multiple trains. In fact, the second time she called chambers to inform the court that she missed another train was the very time when she was expected at court. The juror did not provide any assurances that she would, in fact, show up that day at court. Instead of delaying the trial any longer than it had already been delayed, the court exercised its discretion to remove the juror. In light of this, Perkins' appellate counsel was not ineffective for failing to raise this issue on appeal. *United States v. Johnson*, 223 F.3d 665, 669 (7th Cir. 2000) ("[I]t is sound practice immediately to replace a no-show juror . . . out of consideration for the remaining jurors and in order to remind them of the seriousness of their duty."); *Peters*, 617 F.2d at 505 (no abuse of discretion where court replaced juror on last

day of trial because she was late despite fact that court did not make phone inquiry into juror's whereabouts).

### 6. *Batson* Claim

Perkins argues that appellate counsel was ineffective for failing to raise on appeal the government's strike of a prospective juror. Perkins contends that the government's use of a peremptory to strike prospective juror Ms. Garsenstein was a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). According to Perkins, Garsenstein, who is white, was improperly targeted because she stated her views that African Americans were being unfairly targeted by police in her neighborhood.

Perkins is unable to show prejudice here because even if his appellate counsel had appealed this issue, it would not have been successful. Perkins did not raise a *Batson* challenge at trial and he would have been foreclosed from raising it on appeal. *See, e.g., United States v. Stephens*, 421 F.3d 503, 510 (7th Cir. 2005). As a result, this claim does not merit relief.[5]

### 7. Prior Drug Convictions Under the ACCA

Finally, Perkins argues that his appellate counsel was ineffective for failing to raise the district court's refusal to submit the question of whether his prior drug convictions qualified under the ACCA to the jury – an argument raised by trial counsel at sentencing.

The ACCA mandates a minimum 15 year sentence for a defendant convicted of being a felon in possession of a firearm if that defendant has three prior convictions for a violent felony or a serious drug offense, or both, that were committed on occasions different from one another. 18

---

[5] Perkins' argument that his trial counsel was ineffective for failing to make a *Batson* challenge appears for the first time in his reply brief. Because the argument is undeveloped and was not properly presented, the court deems it waived. *Carter*, 383 F.3d at 679.

U.S.C. § 924(e)(1). The Seventh Circuit has consistently held that "recidivism to enhance a sentence is a traditional sentencing factor and therefore determined by the court and not a jury." *United States v. Hendricks*, 319 F.3d 993, 1008 (7th Cir. 2003); *United States v. Henton*, 374 F.3d 467, 470 (7th Cir. 2004) ("[T]his court has repeatedly rejected the assertion that district courts should treat prior convictions used to enhance a defendant's penalty under ACCA as elements of the offense."). Even had Perkins' counsel raised this claim on appeal, any such argument to the Seventh Circuit would have been rejected. Appellate counsel was not ineffective for failing to raise an argument already squarely rejected by the Seventh Circuit.

        **B.**        **Predicate Offenses under ACCA**

In his amendment to his Section 2255 motion, Perkins argues that his sentence must be vacated because his prior convictions did not qualify as predicate offenses under the ACCA. Specifically, Perkins argues that a 2007 amendment to USSG § 4A1.2 should be applied retroactively to his case, thus mandating that his three predicate convictions be counted as only one conviction, making him ineligible for the enhanced sentence under the ACCA. Perkins' argument has been rejected by the Seventh Circuit because the amendment he relies upon is not retroactive. *United States v. Suggs*, No. 08-3274, 2009 WL 792760, *1 (7th Cir. Mar. 27, 2009); *United States v. Alexander*, 553 F.3d 591, 592 (7th Cir. 2009). In addition, Perkins' argument fails because the amendment to the federal sentencing guidelines does not apply to the ACCA. *United States v. Runnels*, 269 Fed. App'x 609, 610 (7th Cir. 2008) (rejecting argument by armed career criminal that the rules used in calculating a defendant's criminal history score under the guidelines should also control in tallying his qualifying convictions under the ACCA).

Finally, Perkins argues that the maximum penalty applicable to two of his predicate convictions was too low for them to qualify under the ACCA. Because this argument was considered and rejected by the Seventh Circuit, *Perkins*, 449 F.3d at 796, this court may not consider it. *DeMaro v. Willingham*, 401 F.2d 105, 106 (7th Cir. 1968) (holding that contentions made on appeal may not be relitigated under § 2255).

### III. Conclusion

For all the foregoing reasons, petitioner Alonzo Perkins' motion filed pursuant to 28 U.S.C. § 2255 is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 6, 2009